IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **PETER F. KLEIN,** | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | No.   3:20-CV-00058-DCG-RFC |
| | § | |
| **FEDERAL BUREAU OF PRISONS, et al.,** | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On this day, the Court considered the status of the above-styled and numbered cause. On April 8, 2020, the case was referred to this Court by United States District Judge David C. Guaderrama to conduct all preliminary proceedings not inconsistent with 28 U.S.C. § 636(b) and Appendix C of the Local Rules of this District. On June 24, 2020, the United States Department of Justice, Federal Bureau of Prisons ("BOP") and named BOP prison facilities (hereinafter "Defendants"), filed a "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment." (ECF No. 25.)

For the reasons that follow, the Court recommends that Defendants' Motion be **GRANTED**.

### Background

Proceeding *pro se* and *in forma pauperis*, Plaintiff alleges that on December 16, 2010, he was incarcerated at federal prison FCI La Tuna. (ECF No. 1:7). At some point in mid-2010, Plaintiff offered to a Compound Lieutenant to "show that a certain BOP Staff member was committing a crime at La Tuna FCI by smuggling contraband in[to the prison]." (ECF No. 1:8.) In return, Plaintiff asked to be moved to California to be closer to his terminally ill wife. (*Id.*) Plaintiff believes that he was retaliated against as a result of this offer. (*Id.*)

1

Plaintiff alleges that he was assaulted on December 16, 2010, by another inmate at La Tuna. (ECF No. 1:7.)  Plaintiff emphasizes in his Complaint that he did not fight back.  (ECF No. 1:7, 9.)  As a result, Plaintiff suffered a "crushed skull."  (ECF No. 1:7.)  Plaintiff received stitches on his lip from prison medical staff who "noted his forehead being crushed, yet did nothing."  (ECF No.1:8.)  Plaintiff was then placed in a special housing unit cell for eleven days.  (*Id.*)  Plaintiff submitted a medical request and begged staff members to try to get additional medical attention.  (*Id.*)  Plaintiff "showed the Institution Captain how [Plaintiff] could push [his] finger into [Plaintiff's] skull."  (*Id.*)  Plaintiff was unable to eat and suffered from extreme pain.  (*Id.*)  Plaintiff lost 30 pounds due to his inability to eat while in the special housing unit for eleven days.  (*Id.*)

On December 27, 2010, Plaintiff was taken to an outside hospital.  (*Id.*)  Plaintiff told the EMT in the ambulance about his injury and being confined to the SHU and the EMT said, "[T]hey have to stop doing this, they do it all the time here[.]"  (*Id.*; internal quotation marks omitted.)  At the hospital, Plaintiff heard hospital staff say Plaintiff needed surgery by a plastic surgeon due to the location of his injury at the front of his forehead but BOP staff called the hospital and informed them that BOP would not pay for such treatment.  (*Id.*)

Surgery was performed by a hospital doctor, who "took [Plaintiff's] entire forehead/face off [his] skull and made the repairs to [his] skull, stapling [his] scalp/head back together."  (*Id.*)  A protective covering over the surgery site was removed during his transport to a recovery facility. (ECF No. 1:8-9.)  Plaintiff was then held at the recovery facility for several weeks and treated with a "cocktail of prescription medications" before being "suddenly cut off and sent back to La Tuna FCI, and placed in the [special housing unit] again" without any pain medication.  (ECF No. 1:9.)  Plaintiff "was in constant paint."  (*Id.*)

Plaintiff was held in the special housing unit at La Tuna "for a total of seven months with

little or no pain medications, suffering . . . debilitating [pain]." (*Id.*) Plaintiff was removed from his cell on several occasions so that prison staff could go through his legal notes. (*Id.*)

Plaintiff's custody level was then changed from low, with 11 points, to medium, with 19 points, and Plaintiff was transferred to Beaumont prison. (*Id.*) Plaintiff believes this was retaliation for the offer he made regarding investigating smuggling in mid-2010. (*Id.*) After being in the general population at Beaumont, Plaintiff was placed in a special housing unit with the Vice President of the Aryan Circle. (*Id.*) Plaintiff was later approached by members of the Aryan Brotherhood and Wood white supremacist gangs, who threatened to "beat the life out of" Plaintiff if he ever filed anything against the BOP staff at Beaumont. (ECF No. 1:10.) Plaintiff alleges that those gangs "had a deal with staff there [at Beaumont], which did not allow inmate write ups, in exchange for staff looking the other way on other issues." (*Id.*) Plaintiff was sexually assaulted twice and assaulted once while at Beaumont. (*Id.*)

After two years, Plaintiff was transferred to FCI Mendota, where his medical issues "continued to escalate." (*Id.*) Plaintiff experienced problems "with balance, . . . thoughts, lack of sleep, dizziness, digestive issues, extreme chronic pain," and other issues. (*Id.*) Plaintiff was then transferred to FCI Terminal Island after having his medical care level raised. (*Id.*)

At Terminal Island Plaintiff was provided inadequate medication, "all ten of [the medications he was taking] sometimes for weeks at a time." (*Id.*) The medical staff "[r]efused to renew medications[, r]efused to allow medical diagnoses and care by medical specialists[, r]efused to renew lower bunk and lower level Chrono's[, and r]efused to review medical testing or allow access to medical records." (*Id.*) Plaintiff was assaulted again at Terminal Island and cited for fighting. (*Id.*) After being placed in a special housing unit, Plaintiff was not allowed any of his eight chronic care prescriptions for eight days. (*Id.*) Finally, Plaintiff was transferred to FCI

Lompoc, where he was deprived of two medications, lower bunk access, lower level chrono, and an appropriate level of medical care. (ECF No. 11:10-11.) Plaintiff alleges that FCI Lompoc is more than 500 miles from his home address. (*Id.*)

Plaintiff now suffers from "chronic and constant pain at and around [his] crushed skull area." (ECF No. 1:7.) Plaintiff is "unable to exercise, work, move [his] head/forehead and body in specific ways, apply pressure to [his head]" and has "lost feeling in the back half of my scalp." (*Id.*) Plaintiff is now "permanently and horribly scarred at [the] surgery site, suffer[s] from constant dizziness and . . . [is] unbalanced while standing or walking." (ECF No. 1:7-8.) Plaintiff also suffers from "cognizant [*sic*] issues and cannot concentrate for semi-long periods" and takes "over 10 . . . chronic care prescription medications daily." (ECF No. 1:8.)

## Analysis

### I.     Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion, a court accepts well-pleaded facts as true and construes them in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). A complaint will survive a motion to dismiss if its facts, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court's task, then, is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."

4

*Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (*en banc*) (citation and internal quotation marks omitted).

In ruling on a motion to dismiss, courts must limit their inquiry to the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See, e.g.*, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). The same rule also applies to documents attached to the motion and a response thereto; they too must be referred to in the complaint and must be central to the plaintiff's claim. *See Downs v. Liberty Life Assurance Co. of Boston*, No. CIV.A. 3:05-CV-0791R, 2005 WL 2455193, at *3 (N.D. Tex. Oct. 5, 2005). Moreover, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks omitted) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

Furthermore, *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and such pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). However, even a *pro se* complaint may not merely set forth conclusory allegations. The *pro se* litigant must still set forth facts giving rise to a claim on which relief may be granted. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam).

## II.     Rule 56 Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and a fact is material if it 'might affect the outcome of the

suit.'" *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding whether a genuine dispute as to any material fact exists, a trial court considers all of the evidence in the record and "draw[s] all reasonable inferences in favor of the nonmoving party," but "refrain[s] from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Procedurally, the party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *EEOC v. LHC Group.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When the nonmoving party will bear the burden of proof at trial, the moving party may satisfy this responsibility by "point[ing] out the absence of evidence supporting the nonmoving party's case." *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990); *see also Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544–45 (5th Cir. 2005).

If the moving party succeeds, "the onus shifts to the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *EEOC v. LHC Group*, 773 F.3d at 694 (internal quotation marks omitted) (citing *Celotex Corp.*, 477 U.S. at 324). However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (per curiam)). In evaluating whether the parties have met their respective burden, "the Court considers only competent summary judgment evidence." *Reeves v. Wells Fargo Bank, NA*,

6

No. EP-14-CV-00187-DCG, 2015 WL 11598711, at *1 (W.D. Tex. Sept. 4, 2015) (citing, *inter alia*, *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997)); *see also* Fed. R. Civ. P. 56(c).

Finally, the court is to construe liberally the briefs of *pro se* litigants and apply less stringent standards to them than to parties represented by counsel. *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). Nevertheless, a *pro se* party must still brief his issues. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). Further, "even *pro se* litigants must comply with the Federal Rules of Civil Procedure and present proper summary judgment evidence." See *Rolen v. City of Brownfield, Tex.*, 182 F. App'x 362, 365 (5th Cir. 2006) (citing *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980)); *see also EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (noting that *pro se* litigants must present competent summary judgment evidence, as set forth in the Federal Rules of Civil Procedure). It is well settled that allegations in a plaintiff's complaint are not summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

### III.     Exhaustion under the Prison Litigation Reform Act does not apply.

Defendants argue that this action should be dismissed because Plaintiff has failed to exhaust his administrative remedies. (ECF No. 25:6.)

Under the Prison Litigation Reform Act ("PLRA"), "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

Every circuit court that has considered this issue has held that the exhaustion requirements of the PLRA do not apply to plaintiffs who are longer in custody.  *Greig v. Goord*, 169 F.3d 165 (2d Cir. 1999); *Garrett v. Wexford Health*, 938 F.3d 69 (3d Cir. 2019); *Kerr v. Puckett*, 138 F.3d 321, 322-23 (7th Cir. 1998); *Nerness v. Johnson*, 401 F.3d 874 (8th Cir. 2005); *Jackson v. Fong*, 870 F.3d 928 (9th Cir. 2017); *Norton v. City of Marietta*, 432 F.3d 1145 (10th Cir. 2005); *Caddell v. Livingston*, No. 4:14-CV-3323, 2015 WL 1247003 (S.D. Tex. Mar. 17, 2015) ("[A]lthough the Fifth Circuit has yet to rule on the applicability of the exhaustion provision in particular, it has held that that the PLRA's attorney's fees cap does not apply to individuals who were not incarcerated at the time of filing.") (citing *Janes v. Hernandez*, 214 F.3d 541, 543 (5th Cir. 2000)).  As Plaintiff is no longer in custody, and did not file his Complaint while in custody, the Court finds that the PLRA's exhaustion requirement does not apply to him.  Therefore, the Court cannot recommend granting Defendants' Motion on exhaustion grounds.

**IV.    Plaintiff has failed to state a *Bivens* claim.**

Defendants next argue that Plaintiff fails to state a *Bivens* cause of action because the BOP is not a proper defendant in a *Bivens* claim.  (ECF No. 25:8.)

"*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."  *Carlson v. Green*, 446 U.S. 14, 18 (1980) (discussing *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)). Federal agencies cannot be sued via a *Bivens* cause of action. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself.").

As Plaintiff's complaint names only the Bureau of Prisons, a federal agency, and facilities it operates, the Court finds that Plaintiff has failed to state a *Bivens* cause of action.  Accordingly,

8

the Court recommends granting Defendants' motion to dismiss as to any *Bivens* claims in Plaintiff's complaint.

## V.     Plaintiff has failed to state a claim under the Federal Tort Claims Act (FTCA).

Defendants also argue that Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction because Plaintiff failed to meet the notice requirements of the Federal Tort Claims Act (FTCA).  (ECF No. 25:12.)

The FTCA provides that the United States "shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances[.]" 28 U.S.C. § 2674.  "[A]n 'action shall not be instituted upon a claim against the United States for money damages' [under the FTCA] unless the claimant has first exhausted his administrative remedies."  *McNeil v. U.S.*, 508 U.S. 106, 107 (1980) (quoting 28 U.S.C. § 2675(a)).  The Fifth Circuit has described the notice requirement of the FTCA as follows:

> [A]n individual with a claim against the government satisfies the notice requirement of § 2675 if he or she: "(1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." . . . Moreover, we have held that no particular form or manner of giving such notice is required as long as the agency is somehow informed of the fact of and amount of the claim within the two year period prescribed by § 2401(b).

*Martinez v. United States*, 728 F.2d 694, 696 (5th Cir. 1982) (quoting from *Williams v. United States*, 693 F.2d 555, 557 (5th Cir. 1982)).

Here, Defendants assert that Plaintiff's Complaint fails to meet the notice requirement of the FTCA because he did not provide them with written notice of his claim.  (ECF No. 25:12.)  There is nothing in either Plaintiff's Complaint (ECF No. 1) nor his Response to Defendants' Motion (ECF No. 26) to contradict Defendants' argument on this point.  As the notice "requirement is a prerequisite to suit under the FTCA," the Court finds that subject matter jurisdiction does not exist in this case.  *Life Partners Inc. v. United States*, 650 F.3d 1026, 1030 (5th Cir. 2011).  As

such, the Court recommends dismissal for lack of jurisdiction. Fed. R. Civ. Proc. 12(b)(1).

## Conclusion

Plaintiff's claims cannot be sustained under a *Bivens* cause of action and furthermore fail to meet the notice requirements of the FTCA. Therefore, the Court recommends that Defendants' Motion to Dismiss and/or for Summary Judgment be **GRANTED** and Plaintiff's Complaint be dismissed for failure to state a claim and for lack of subject matter jurisdiction. However, the Court recommends that Plaintiff's Complaint be dismissed without prejudice, as his *Bivens* claim may stand if brought against the federal employees involved in the facts at issue in his Complaint.

**SIGNED** this 12th day of August, 2020.

ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**